## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

BRIAN C. DAVISON,

           Plaintiff,

    v.

FACEBOOK, INC., et al.,

           Defendants.

Civil Action No. 1:18-cv-1125-AJT-TCB

## SERVICE PROVIDER DEFENDANTS' MEMORANDUM IN
## OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

### INTRODUCTION

A preliminary injunction is an extraordinary remedy, warranted only if Plaintiff can show he is likely to succeed on the merits of his claims. Plaintiff cannot make that showing here because his underlying constitutional claims against Facebook, Inc., Twitter, Inc., and YouTube, LLC (collectively, the "Service Providers") fail as a matter of law. The Service Providers are private companies, not state actors subject to the strictures of the First and Fourteenth Amendments. Plaintiff's constitutional claims are thus legally invalid and cannot succeed on the merits. Further, Plaintiff lacks standing to assert all of his claims against YouTube and Twitter and one of his claims against Facebook. Beyond failing to establish a likelihood of success on the merits, Plaintiff also has not shown that the other preliminary injunction factors support the relief he seeks. Plaintiff does not—and cannot—establish that he will suffer irreparable harm absent preliminary relief, or that the balance of equities or public interest otherwise warrant a preliminary injunction. For those reasons, and for those explained below, the Court should deny Plaintiff's motion.

## BACKGROUND

Plaintiff filed a complaint against the Service Providers and the Loudoun County School Board ("LCSB") on September 5, 2018, alleging the Service Providers' enforcement of their Terms of Service violated his constitutional rights. *E.g.*, Compl. ¶¶ 80, 85, ECF No. 1. On November 2, 2018, the Service Providers and LCSB moved to dismiss the complaint, and the parties subsequently completed briefing on that motion. ECF Nos. 29–31, 44. Plaintiff thereafter sought and obtained leave to amend his complaint. ECF Nos. 46–50. Plaintiff filed his Amended Complaint on January 3, 2019, adding claims against Facebook based on its deletion of several of Plaintiff's comments months and, in one instance, years before. Am. Compl. ¶¶ 97–116, ECF No. 51. Plaintiff also moved for a preliminary injunction, contending he will suffer irreparable harm unless the Service Providers are immediately enjoined from enforcing their Terms of Service on "government sponsored social media pages" absent "due process." Pl.'s Mem. in Supp. of Mot. for a Prelim. Inj. ("Pl.'s PI Mem.") at 2–3, ECF No. 53. Plaintiff further seeks to enjoin the Service Providers from enforcing the venue provisions in their Terms of Service, *see id.*, despite the fact that the Service Providers have not sought to transfer venue in this case, *see* Pl.'s Opp'n to Service Providers' Mot. to Dismiss at 10 n.7, ECF No. 41.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). For such extraordinary relief to be granted, Plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. All four requirements must be

satisfied.  *See id.*; *Henderson ex rel. Nat'l Labor Relations Bd. v. Bluefield Hosp. Co.*, 902 F.3d 432, 439 (4th Cir. 2018).[1]  "[T]he party seeking the preliminary injunction must demonstrate by 'a clear showing' that, among other things, it is likely to succeed on the merits at trial." *Real Truth About Obama*, 575 F.3d at 346.  Where one requirement is clearly absent, the court need not "mechanically consider all four *Winter* factors." *Henderson*, 902 F.3d at 439.

## ARGUMENT

### I.   Plaintiff Is Not Likely to Succeed on the Merits.

Plaintiff's motion for a preliminary injunction should be denied because he is not likely to succeed on the merits of his claims.  Plaintiff's claims fail for at least two basic reasons: (1) because he seeks to assert constitutional claims against private companies, not state actors; and (2) because he lacks standing to bring any claim against YouTube and Twitter, or to bring a claim against any Service Provider based on the forum-selection clauses contained in their Terms of Service.

### A.   Plaintiff's claims lack merit because none of the Service Providers is a state actor.

None of the claims in Plaintiff's Amended Complaint are likely to succeed on the merits for the fundamental reason that he brings constitutional claims against private companies, not state actors.  *See Blum v. Yaretsky*, 457 U.S. 991, 1002–03 (1982) ("[T]he action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States.  That Amendment erects no shield against merely private conduct."); *DeBauche v. Trani*,

---

[1] Plaintiff incorrectly relies on an outdated preliminary injunction standard, *see* Pl.'s PI Mem. at 3, which directed courts to consider the likelihood-of-success requirement only after "a balancing of hardships is conducted and then only under the relaxed standard of showing that 'grave or serious questions are presented' for litigation." *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346–47 (4th Cir. 2009), *vacated and remanded on other grounds*, 559 U.S. 1089(2010), *reinstated in relevant part*, 607 F.3d 355 (4th Cir. 2010) (per curiam).  The Fourth Circuit clarified in *Real Truth About Obama*, however, that this standard was inconsistent with *Winter*.  *Id.*

191 F.3d 499, 510 (4th Cir. 1999) ("[T]he constitutional protection[] of free speech . . . appl[ies] only against governmental action, and not against private action[.]").

Although Plaintiff concedes that all of his claims require that the Service Providers be considered state actors, *see* Am. Compl. ¶¶ ¶¶ 2, 73, 85, 89, 95, 111, 115, 121, ECF No. 51, the Amended Complaint does not allege any facts that could transform private parties like the Service Providers into state actors.  Numerous courts have dismissed constitutional claims against private companies such as the Service Providers for lack of state action.[2]  In light of this overwhelming case law, it is highly likely that Plaintiff's claims will fail.

---

[2] *See, e.g.*, *Fehrenbach v. Zeldin*, No. 17-CV-5282 (JFB)(ARL), 2018 WL 4242452, at *2–*3 (E.D.N.Y. Aug. 6, 2018) (dismissing constitutional claims against Facebook for failure to establish that Facebook is a state actor), *R. & R. adopted by* 2018 WL 4242453 (E.D.N.Y. Sept. 5, 2018); *Prager Univ. v. Google LLC*, No. 17-CV-06064-LHK, 2018 WL 1471939, at *8 (N.D. Cal. Mar. 26, 2018) ("[C]ourts have declined to treat . . . private social media corporations, as well as online service providers, as state actors."); *Nyabwa v. Facebook*, No. 2:17-CV-24, 2018 WL 585467, at *1–*2 (S.D. Tex. Jan. 26, 2018) (dismissing constitutional claims against Facebook for failure to establish that Facebook is a state actor); *Shulman v. Facebook.com*, No. 17-764 (JMV), 2017 WL 5129885, at *4 (D.N.J. Nov. 6, 2017) (same); *Casterlow-Bey v. Google Internet Search Engine Co.*, No. 3:17-cv-05621-RBL-JRC, 2017 WL 6876215, at *1 (W.D. Wash. Sept. 26, 2017) ("defendant is not a state actor and so is not liable under § 1983" of the Civil Rights Act), *R. & R. adopted by* 2017 WL 6882978 (W.D. Wash. Oct. 23, 2017); *Forbes v. Facebook, Inc.*, No. 16 CV 404 (AMD), 2016 WL 676396, at *2 (E.D.N.Y. Feb. 18, 2016) (dismissing § 1983 claims against Facebook for failure to allege action under color of state law); *Doe v. Cuomo*, No. 10-CV-1534 (TJM/CFH), 2013 WL 1213174, at *8–*9 (N.D.N.Y. Feb. 25, 2013) (same); *Shah v. MyLife.com, Inc.*, No. 3:12-cv-1592-ST, 2012 WL 4863696, at *4 (D. Ore. Sept. 21, 2012) (holding that plaintiff failed to state a claim under § 1983 because both MyLife.com, Inc. and Google, Inc. are private, for-profit companies with private persons as their officers), *R. & R. adopted by* 2012 WL 4863271 (D. Ore. Oct. 11, 2012); *Young v. Facebook, Inc.*, No. 5:10-cv-03579-JF/PVT, 2010 WL 4269304, at *2 (N.D. Cal. Oct. 25, 2010) (holding that Facebook is not a state actor); *Jayne v. Google Internet Search Engine Founders*, No. 3:07cv1677, 2007 WL 2852383, at *1 & n.4 (M.D. Pa. Sept. 27, 2007) (dismissing with prejudice civil rights claim against Google because "[t]here is no valid assertion that [Google's actions are] somehow a violation of the law or the Constitution" and "any amendment would be futile"), *aff'd*, 263 F. App'x 268 (3d Cir. 2008) (per curiam); *Noah v. AOL Time Warner Inc.*, 261 F. Supp. 2d 532, 536, 546 (E.D. Va. 2003) (there is no "evident basis" for the argument that AOL is a state actor (citing *Green v. Am. Online (AOL)*, 318 F.3d 465, 472 (3d Cir. 2003))); *Howard v. Am. Online Inc.*, 208 F.3d 741, 754 (9th Cir. 2000) (finding that AOL was not an "instrument or agent" of the government and thus not a state actor subject to the First Amendment); *Cyber Promotions, Inc. v. Am. Online, Inc.*, 948 F. Supp. 436, 441–45 (E.D. Pa.

Plaintiff's far-fetched theory that the Service Providers qualify as state actors under a narrow exception to the state-action doctrine similarly fails to show a likelihood of success on the merits. *See* Pl.'s PI Mem. at 5–8, ECF No. 53. A private party's conduct constitutes state action only when the "State is *responsible* for the specific conduct of which the plaintiff complains." *Blum*, 457 U.S. at 1004; *see also Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 178, 183–84 (4th Cir. 2009) (finding that a private entity was not a state actor where the entity's decision-making was not controlled by the State). This narrow exception to the state-action doctrine is intended to ensure that the state cannot evade its constitutional duties by using private parties to perform government acts or functions, not to impose on purely private actors the same "restrictions imposed on the conduct of government." *See Andrews v. Fed. Home Loan Bank of Atlanta*, 998 F.2d 214, 216, 217–18 (4th Cir. 1993). As the Fourth Circuit has recognized, the actions of a private party "will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 (4th Cir. 2009) (internal quotation marks omitted). Plaintiff contends the Service Providers should be treated as state actors for two reasons: (1) the state has delegated a traditionally and exclusively public function to a private actor; and (2) the Service Providers are in a symbiotic relationship with LCSB.[3] Neither theory has merit.

1.      **The Service Providers have not been delegated a traditionally and exclusively public function.**

Plaintiff principally relies on the "public function" theory of state action, which applies "when the state has delegated a traditionally and exclusively public function to a private actor[.]"

_____

1996) (rejecting the argument that AOL is a state actor).

[3] Plaintiff set forth his purported theories of state action in response to the Service Providers'

*DeBauche*, 191 F.3d at 507.  Under the public function theory, "the relevant question is not simply whether a private group is serving a 'public function.' . . .  [T]he question is whether the function performed has been traditionally the *exclusive prerogative of the State*."  *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (emphasis modified) (internal quotation marks omitted).  This is a "very narrow" category of state actor liability, *DeBauche*, 191 F.3d at 508, that "has been 'carefully confined' . . . so as not to interfere with the state's ability to contract for services not traditionally exclusively reserved to the state."  *Andrews*, 998 F.2d at 218 (citation omitted).

Plaintiff pleads no facts suggesting LCSB or any other government actor delegated any function to the Service Providers, much less a traditionally and exclusively public one.  Plaintiff admits "LCSB retains the ability to delete user comments or block users from commenting on their social media pages on [the Service Providers' platforms]."  Am. Compl. ¶ 83, ECF No. 51.  Plaintiff further admits the Service Providers developed their content policies to "operate equally across all social media pages on [their] sites including pages controlled by government organizations such as . . . LCSB."  *Id.* ¶ 52.  There can be no "delegation" from the government to the Service Providers when (i) the government actors who use their platforms indisputably remain free to control access to their accounts, and (ii) the Service Providers develop and implement their content policies and apply them across all their account holders.  *See, e.g.*, *Daimler Tr. v. Prestige Annapolis, LLC*, Civil Action No. ELH-16-544, 2016 WL 3162817, at *11 (D. Md. June 7, 2016) (dismissing claims under the public-function theory where the private actor's conduct resulted "purely as a consequence of a private commercial transaction," and there was "no allegation that [defendant] was operating on behalf of the State or in conjunction with State officials").  To

motion to dismiss his original complaint.  *See* Pl.'s Opp'n to Service Providers' Mot. to Dismiss at 18–22, ECF No. 41.

conclude otherwise would run afoul of "the general rule that the governmental entity must play a role in the *specific decision* that led to the deprivations complained of by an aggrieved person" to impose state-actor liability on a private actor.  *Philips*, 572 F.3d at 183 (emphasis added).

Plaintiff's "public function" theory also fails because he has not plausibly alleged that the Service Providers perform any "powers traditionally exclusively reserved to the State."  *Holly v. Scott*, 434 F.3d 287, 293 (4th Cir. 2006) (citation omitted).  In response to the Service Providers' prior motion to dismiss his original Complaint, Plaintiff argued they are engaged in the "exclusively government function" of administering public forums by allowing governmental entities to create accounts on their platforms.  *See* Pl.'s Opp'n to Service Providers' Mot. to Dismiss at 21, ECF No. 41.  The cases on which Plaintiff relied are clearly distinguishable and only confirm he cannot establish a likelihood of success on the merits.  *See* Service Providers' Mem. in Supp. of Mot. to Dismiss Am. Compl. at 8–9, ECF No. 62.  Directly applicable precedent establishes that allegations of a private party's moderation of a purported public forum do not state a claim under the "public function" theory.  *See DeBauche*, 191 F.3d at 508–09; *see also* Service Providers' Mem. in Supp. of Mot. to Dismiss Am. Compl. at 9–10, ECF No. 62.

In short, this Court should join others that have rejected similar attempts to impose state-actor liability on service providers based on such a theory.  *See, e.g., Green*, 318 F.3d at 472 (rejecting claims that AOL's Community Guidelines violate the First Amendment and that AOL is a state actor "because AOL provides a connection to the Internet on which government and taxpayer-funded websites are found"); *Prager Univ.*, 2018 WL 1471939, at *8 (plaintiff's allegations that Google and YouTube are state actors because they operate their private property "as a forum for expression" did not show that the providers "engaged in one of the 'very few' public functions that were traditionally 'exclusively reserved to the State.'" (quoting *Flagg Bros.*,

*Inc. v. Brooks*, 436 U.S. 149, 158 (1978)); *Cuomo*, 2013 WL 1213174, at *9 (concluding plaintiff's allegation that "Facebook acts jointly with the New York State [sic] to monitor the [I]nternet activities of convicted sex offenders and restrict or ban certain convicted sex offenders from using Facebook" was insufficient to show that Facebook acted under color of state law); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 631 (D. Del. 2007) ("[C]onclusory allegation[s] that a private entity acted in concert with a state actor do[] not suffice to state a [constitutional] claim against the private entity." (quoting *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002))).

>       **2.     The Service Providers do not maintain a symbiotic financial relationship with LCSB.**

Plaintiff also argues that the Service Providers are state actors because they "maintain a financially beneficial, symbiotic relationship" with LCSB. *See* Pl.'s Opp'n to Service Providers' Mot. to Dismiss at 14, 21–22. ECF No. 41. That theory is meritless. Plaintiff relies on *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961), but that case is plainly distinguishable. *See* Service Providers' Mem. in Supp. of Mot. to Dismiss Am. Compl. at 10–12, ECF No. 62. In *Burton*, the Court concluded the state had "so far insinuated itself into a position of interdependence" with a private restaurant that the alleged discriminatory action fell within the scope of the Fourteenth Amendment. 365 U.S. at 725. Plaintiff does not include allegations remotely analogous to the degree of state participation at issue in *Burton. See DeBauche*, 191 F.3d at 508 ("As distinguished from *Burton*, DeBauche's amended complaint does not describe facts that suggest interdependence such that VCU relied on the private defendants for its continued viability."). Nonetheless, Plaintiff contends that under *Burton*, "when government bodies stand to gain financially because of the unconstitutional discrimination of their private partners, the private parties become state actors." Pl.'s Opp'n to Service Providers' Mot. to Dismiss at 21–22, ECF No. 41. That is an incorrect statement of the law. *Burton* did not hold that a private entity becomes

a state actor whenever the government may benefit financially from the private entity. Were that the rule, the state-action doctrine would expand significantly. Rather, the doctrine applies where the government and a private entity are interdependent to such an extent that the private entity's "conduct amount[s] to a surrogacy for state action." *DeBauche*, 191 F.3d at 508. Such interdependence is wholly lacking here, and Plaintiff's vague allegations about financial gain are insufficient to render the Service Providers state actors under *Burton*. *See* Service Providers' Mem. in Supp. of Mot. to Dismiss Am. Compl. at 10–12, ECF No. 62.

In short, Plaintiff's claims fail for the simple reason that the Service Providers are not state actors. Plaintiff does not come close to showing that the Service Providers' private conduct fits into the narrow set of circumstances in which private entities are considered state actors, and he thus fails to establish his claims are likely to succeed on the merits.

### B. Plaintiff's Claims Against the Service Providers Should Be Dismissed Because Plaintiff Lacks Standing.

Plaintiff also cannot establish he is likely to succeed on the merits of his claims because he has not pled facts sufficient to establish standing for those claims. To establish standing, Plaintiff must demonstrate he suffered an "injury[-]in[-]fact"—an infringement of a legally-protected interest that is "concrete and particularized, and . . . 'actual or imminent, not "conjectural" or "hypothetical[.]"'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted). That is, "the injury must affect the plaintiff in a personal and individual way." *Id.* at 560 n.1. Plaintiff must further show that his injury is "fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation omitted).

Even after an opportunity to amend his complaint, Plaintiff still cannot plead that YouTube or Twitter took any action against Plaintiff. Nor has Plaintiff pled any facts establishing that

YouTube or Twitter have taken action against anyone else for comments made on government-affiliated YouTube channels or Twitter accounts that Plaintiff frequents, or that YouTube or Twitter have otherwise blocked Plaintiff from accessing content on any government-affiliated social media sites.[4]  In fact, he does not even allege he created an account on YouTube or Twitter which would allow him to post content.  Plaintiff has thus failed to establish standing to pursue his claims against YouTube and Twitter, let alone demonstrated he is likely to succeed on the merits of those claims.[5]

Plaintiff also cannot show he is likely to succeed on the merits of his claim that the Service Providers' forum selection provisions impose an unconstitutional prior restraint on protected speech because he has failed to establish standing as to any of the Service Providers on that claim. No Service Provider has sought to enforce a forum-selection clause in this case, and Plaintiff has failed to allege any facts supporting his claim that he or anyone else has been chilled on any social media platform due to the forum selection clauses in the Service Providers' Terms of Service.

## 1.  YouTube and Twitter have taken no action against Plaintiff.

Plaintiff fails to allege that he has suffered any direct injury-in-fact traceable to YouTube and Twitter.  In particular, he fails to allege that he posted any content on YouTube's or Twitter's platforms, much less content that would violate YouTube's or Twitter's policies.  Plaintiff likewise fails to allege that or that YouTube or Twitter took action against him personally, such as deleting his content or accounts.  Indeed, Plaintiff has not identified a single instance where either YouTube

---

[4] Even if Plaintiff had pled allegations regarding action against third parties, that alone would be insufficient to establish Plaintiff's standing.  *See infra*, at 12–14.

[5] Although Facebook does not challenge standing as to all of Plaintiff's claims for purposes of its motion to dismiss, Plaintiff cannot prove an injury-in-fact, and Facebook reserves the right to challenge standing and injury if the case were to proceed.

or Twitter deleted any individual's comments on a government-affiliated YouTube channel (or video) or Twitter account.

"[T]he 'injury[-]in[-]fact' test requires . . . that the party seeking review be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972).  Because Plaintiff has failed to provide any evidence of YouTube's or Twitter's invasion of his legally protected interests, any supposed injury caused by YouTube or Twitter in the instant case is merely "conjectural or hypothetical" and not "concrete," "actual[,] and imminent" as required for standing.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493–96 (2009) (rejecting theory of standing based on a speculative chain of events); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." (citation omitted)).  Because Plaintiff has failed to allege how he himself was injured by YouTube or Twitter, he lacks constitutional standing.

Moreover, it is well established that Plaintiff has no standing to assert the rights of others, and his general allegations of injury to "citizens" and "users" do not establish an injury-in-fact. *See Barry v. Sumter Cty.*, 152 F. App'x 265, 266 (4th Cir. 2005) (per curiam) ("[A] plaintiff may only invoke its own constitutional rights and may not claim rights of others not before the court.").

At bottom, Plaintiff alleges only an abstract, generalized grievance against YouTube and Twitter "common [to] all members of the public."  *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220–21 (1974).  It is well settled that such allegations do not establish standing. *Id.*; *see also Hollingsworth v. Perry*, 570 U.S. 693, 705–07 (2013) ("[C]laiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an

Article III case or controversy." (citations omitted)); *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) ("The party who invokes the [judicial] power must be able to show . . . that he has sustained or is immediately in danger of sustaining some direct injury . . . , and not merely that he suffers in some indefinite way in common with people generally."); *Burke v. City of Charleston*, 139 F.3d 401, 405 (4th Cir. 1998) (highlighting that courts are neither well-prepared or recommended to adjudicate "abstract, generalized grievance[s]" (citation omitted)).

That Plaintiff's claims are grounded in the First Amendment does not change the result here. Although "[i]n certain First Amendment cases, plaintiffs may challenge a provision's constitutionality as applied to other parties[,]" this "only assists plaintiffs who have suffered some injury from application of the contested provision to begin with." *Gilles v. Torgersen*, 71 F.3d 497, 501 (4th Cir. 1995). But Plaintiff does not allege that he has personally suffered some injury related to YouTube's or Twitter's content policies, or even an injury resulting from their application to others' speech. He therefore cannot establish standing, even under this standard. *Id.* (citing *Bordell v. Gen. Elec. Co.*, 922 F.2d 1057, 1061 (2d Cir. 1991) ("[I]n a narrow class of First Amendment cases" litigants can "seek redress for violations of the rights of others[,]" but "[t]his slender exception to the prudential limits on standing . . . does not affect the rigid constitutional requirement that plaintiffs must demonstrate an injury-in-fact to invoke a federal court's jurisdiction.")).

## 2. Alleged restraints on others' speech do not provide Plaintiff standing for his claims.

Plaintiff also does not have standing against YouTube or Twitter based on new allegations relating to non-party Meredith Joy Amonson. While, in certain circumstances, the Constitution protects the Plaintiff's right to receive information from a third party like Ms. Amonson, to establish standing based on another party's injury, Plaintiff must demonstrate a "direct connection"

between the speaker (Ms. Amonson) and himself such that, without the policies in question, Plaintiff "would expect to receive the information" that Ms. Amonson possesses. *Stephens v. Cty. of Albermarle, VA*, 524 F.3d 485, 492 (4th Cir. 2008). Plaintiff pleads no concrete allegations establishing any such "direct connection" between Ms. Amonson and himself with respect to Ms. Amonson's use of Twitter or YouTube. Plaintiff does not allege that Ms. Amonson posted content (or wants to post content) on any YouTube channel or Twitter account affiliated with LCSB or any other government entity that would violate YouTube's or Twitter's policies, or that YouTube or Twitter has taken action against Ms. Amonson personally, such as deleting her content or accounts. *See* Am. Compl. ¶¶ 74–79, ECF No. 51. There is therefore no factual basis to assert that Ms. Amonson has been chilled in commenting on any government-affiliated YouTube channel or Twitter account, or that Plaintiff has been blocked from receiving any such comments.

To the extent that Plaintiff is asserting that Ms. Amonson's speech could be chilled in the future, only a "non-speculative and objectively reasonable" chilling effect is sufficient to establish an injury-in-fact. *Cooksey v. Futrell*, 721 F.3d. 226, 236 (4th Cir. 2013). The Fourth Circuit has held that individuals are subject to "non-speculative and objectively reasonable" chilling effects where they are subject to government statutes that either criminalized or imposed severe civil penalties on the individuals' speech activities and therefore are "likely to deter a person of ordinary firmness from the exercise of First Amendment rights." *See Kenny v. Wilson*, 885 F.3d 280, 284, 289–90 (4th Cir. 2018) (concluding plaintiffs faced a credible threat of future arrest or prosecution where plaintiffs had previously been criminally prosecuted under the state laws they were challenging and where plaintiffs were planning to engage in the same activities in the future); *PETA, Inc. v. Stein*, 737 F. App'x 122, 130–31 (4th Cir. 2018) (per curiam) (holding plaintiffs had sufficiently alleged an actual and well-founded fear that a state statute would be enforced against

them where the state law was "specifically targeted at" plaintiffs and imposed "severe exemplary damages"); *Cooksey*, 721 F.3d at 231, 237 (concluding plaintiff's speech was chilled where plaintiff was directly informed by an executive official of the state agency that he had violated a state statute, under which he could be prosecuted for a misdemeanor).  Plaintiff cannot allege that Ms. Amonson would be subject to criminal or civil penalties for her speech.

Plaintiff previously asserted in his Opposition to Service Provider Defendants' Motion to Dismiss, that he only needs to show that a "reasonably objective speaker in a similar situation would be chilled" by the Service Providers' content policies.  Pl.'s Opp'n to Service Providers' Mot. to Dismiss at 12 n.11, ECF No. 41.  However, the Fourth Circuit has consistently required that the plaintiff's own speech be chilled.  *See Abbott v. Pastides*, 900 F.3d 160, 171 (4th Cir. 2018) ("[I]t is not enough to establish that a reasonable person *could* have engaged in self-censorship . . . .  Instead, the plaintiffs must show that [the challenged action] . . . deterred some specific intended act of expression protected by the First Amendment.") (emphasis in original); *Smith v. Frye*, 488 F.3d 263, 273 (4th Cir. 2007) (no standing where plaintiff alleged governmental retaliatory action against a third party chilled plaintiff's speech).  Plaintiff cannot merely rely—as he attempts to do here—on the remote possibility that third parties might self-censor.  Here, Plaintiff cannot show that he or Ms. Amonson reasonably has been or could be chilled by YouTube's or Twitter's application of content policies to government-affiliated social media platforms because neither has been subjected to any action by these Service Providers.

### 3. Plaintiff has not pled facts establishing any chilling effect caused by the Service Providers' forum selection clauses.

Plaintiff also cannot establish standing against any of the Service Providers as to his claim that the forum selection clauses contained in their Terms of Service are unconstitutional prior restraints on protected speech.  No Service Provider has sought to enforce its forum-selection

clause in this case.  *See* Pl.'s Opp'n to Service Providers' Mot. to Dismiss at 10 n.7, ECF No. 41. And, with respect to YouTube and Twitter in particular, Plaintiff's Amended Complaint contains no allegation that he has accounts on either YouTube or Twitter that required him to agree to their Terms of Service; therefore, the threatened enforcement against him of any forum selection clause is entirely "conjectural" and "speculative."  *Lujan*, 504 U.S. at 560–61 (citations omitted).

The Amended Complaint also fails to allege any facts supporting the notion that Plaintiff, or indeed anyone, has been chilled in posting comments on any social media platform due to the forum selection clauses in the Service Providers' Terms of Service.  Absent some factual allegations connecting the existence or enforcement of the Service Providers' forum selection clauses with an actual chilling of speech, Plaintiff has failed to allege any injury-in-fact arising from the existence of such clauses.  Under these circumstances, he has no standing to allege Count V against any of the Service Providers and therefore has not shown a likelihood of success on the merits necessary to support a preliminary injunction.

## II.      Plaintiff Has Not Established Irreparable Harm.

Plaintiff also cannot show he is likely to suffer irreparable harm absent a preliminary injunction.  As the Fourth Circuit has recognized, "in the context of an alleged violation of First Amendment rights, a plaintiff's claimed irreparable harm is inseparably linked to the likelihood of success on the merits of plaintiff's First Amendment claim."  *WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009) (internal quotation marks and citation omitted); *see also Mom N Pops, Inc. v. City of Charlotte*, No. 97-2359, 1998 WL 537928, at *1, *3 (4th Cir. 1998) (per curiam) (affirming the district court's denial of a preliminary injunction, which found that the plaintiff was "not likely to suffer any irreparable harm since the alleged injury to [plaintiff] was necessarily subsumed in the court's determination that [plaintiff]

was not likely to succeed on the merits of its [First Amendment] claims").  Because Plaintiff is not likely to succeed on the merits of his claims, he also is not likely to suffer irreparable harm.

## III.    The Balance of Equities and the Public Interest Do Not Support a Preliminary Injunction.

Finally, Plaintiff's motion should be denied because he has failed to establish that the balance of equities or the public interest support the emergency relief he seeks.  In evaluating the equities, "courts 'must balance the competing claims of injury and . . . consider the effect on each party of the granting or withholding of the requested relief.'"  *Winter*, 555 U.S. at 24 (citation omitted).  Courts should also "pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  *Id.* (citations omitted).

Here, the balance of equities tips strongly against granting preliminary relief.  Plaintiff's motion asks the Court to enjoin the Service Providers from enforcing their Terms of Service on "government sponsored social media pages" absent "due process" but fails to specify how this could be done.  Pl.'s PI Mem. at 2–3, ECF No. 53.  Plaintiff's failure to describe the relief sought with sufficient specificity to allow the Service Providers to act is itself sufficient grounds on which to deny the motion.  Federal Rule of Civil Procedure 65(d)(1) requires that "[e]very order granting an injunction must . . . state the reasons why it issued; . . . state its terms specifically; [and] describe in reasonable detail . . . the act or acts restrained or required."  As the Fourth Circuit has explained, "[t]he specificity provisions of Rule 65(d) are no[t] mere technical requirements.  The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood."  *CPC Int'l, Inc. v. Skippy Inc.*, 214 F.3d 456, 459 (4th Cir. 2000) (citations omitted).  Plaintiff's motion should therefore be denied for the separate reason that he fails to articulate the relief he seeks with the specificity required by Rule 65.

Nonetheless, it is clear that Plaintiff's vague request for relief constitutes a request for a mandatory injunction, which should be "sparingly exercised" and "granted only in those circumstances when the exigencies of the situation demand such relief." *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980).   Such an injunction would force the Service Providers to fundamentally alter the manner in which they run their private businesses, for example, by adopting and applying different Terms of Service, for government-sponsored pages.  The Service Providers estimate that they collectively operate thousands of government-sponsored pages, and every day those pages host millions of posts and other content.  Instituting Plaintiff's proposed processes would be an enormous undertaking, and is unwarranted based on the scant record proffered by Plaintiff in his motion.

On the other hand, the impact on Plaintiff of withholding injunctive relief would be comparatively small.  Plaintiff's only alleged harm stems from a handful of incidents in which his posts were removed from Facebook's platform.  The most recent alleged instance occurred several months ago, and that content was restored quickly.  *See* Pl.'s Opp'n to Service Providers' Mot. to Dismiss at Ex. 2, ECF No. 41-2.  Plaintiff's delay in seeking emergency relief to address these isolated incidents demonstrates the equities do not favor granting a preliminary injunction here. *See, e.g.*, *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) ("Since an application for preliminary injunction is based upon an urgent need for the protection of [a] Plaintiff's rights, a long delay in seeking relief indicates that speedy action is not required" (alterations in original) (citation omitted)); *L.E.A. v. Bedford Cty. Sch. Bd.*, No. 6:15-cv-00014, 2015 WL 4460352, at *5 (W.D. Va. July 21, 2015).

Plaintiff also has failed to show that a preliminary injunction would serve the public interest.  To the contrary, his proposed relief would likely lead to additional harm to members of

the public who use the Service Providers' platforms.   One of the goals of the Service Providers'
content policies is to promote safety on the platforms.   *See* Facebook Community Standards
(explaining that the goal of Facebook's policies is to prevent abuse and increase safety); Twitter
Rules and Policies (noting the purpose of Twitter's policies is to combat abuse on the platform);
YouTube Community Guidelines (noting that YouTube does not support harmful, dangerous, or
violent content).   Suspending the operation of those policies during the pendency of this case, as
Plaintiff requests, would hinder the Service Providers' efforts to protect the people on their
platforms.   Plaintiff therefore fails to show how a prohibition on the Service Providers' ability to
remove or moderate abusive or violent content across their vast platforms during the pendency of
this litigation serves the public interest.

## CONCLUSION

For the foregoing reasons, the Service Providers respectfully request that the Court deny
Plaintiff's motion for a preliminary injunction.

Dated:  January 25, 2019                     Respectfully submitted,

                                             */s/ Craig C. Reilly*
                                             Craig C. Reilly (VSB # 20942)
                                             111 Oronoco Street
                                             Alexandria, Virginia 22314
                                             T:  (703) 549-5354
                                             F:  (703) 549-5355
                                             E:  craig.reilly@ccreillylaw.com

                                                   *- and -*

                                             Craig S. Primis (admitted *pro hac vice*)
                                             K. Winn Allen (admitted *pro hac vice*)
                                             Mary E. Miller (admitted *pro hac vice*)
                                             KIRKLAND & ELLIS LLP
                                             655 Fifteenth Street, N.W.
                                             Washington, D.C. 20005-5793
                                             Telephone: 202.879.5000
                                             Fax: 202.879.5200

craig.primis@kirkland.com
winn.allen@kirkland.com
mary.miller@kirkland.com

*Counsel for Defendant Facebook, Inc.*


/s/ John K. Roche (with permission)
John K. Roche (VSB# 68594)
Ariel B. Glickman (VSB# 90751)
Perkins Coie LLP
700 13th St. N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: 202-434-1627
Facsimile: 202-654-9106
JRoche@perkinscoie.com

*Counsel for Defendant Twitter, Inc.*


/s/ Emily Rose (with permission)
Emily Rose (VSB # 89529)
John E. Schmidtlein (admitted *pro hac vice*)
Thomas G. Hentoff (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, D.C. 20005
(202) 434-5000
(202) 434-5029 (facsimile)
erose@wc.com
thentoff@wc.com
jschmidtlein@wc.com

*Counsel for Defendant YouTube, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of January 2019, a true and complete copy of the foregoing was served on all parties and filed through the Court's CM/ECF system, which has served a copy on Plaintiff, *pro se*, who has been allowed to receive E-Noticing of filings (Doc. 5) at the following e-mail address:

> Brian C. Davison, Plaintiff *pro se*
> bcdavison@hotmail.com

> /s/ Craig C. Reilly
> Craig C. Reilly (VSB # 20942)
> 111 Oronoco Street
> Alexandria, Virginia 22314
> T:  (703) 549-5354
> F:  (703) 549-5355
> E:  craig.reilly@ccreillylaw.com

> *Counsel for Defendant Facebook, Inc.*