IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

BRIAN C. DAVISON,                          )
                                           )
            Plaintiff,                     )
                                           )
v.                                         )          Civil Action No. 1:18-cv-1125 (AJT/TCB)
                                           )
FACEBOOK, INC., *et al.*,                  )
                                           )
            Defendants.                    )

## ORDER

Plaintiff, appearing *pro se*, filed this action alleging a violation of his and others' First

Amendment and Due Process rights against four Defendants—Facebook, Inc., YouTube, LLC,

Twitter, Inc., and the Loudoun County School Board ("the School Board"). In response to the

Complaint, defendants have filed motions to dismiss.[1] *See* Defendant Loudoun County School

Board's Motion to Dismiss and *Roseboro* Notice [Doc. 57] and Defendants Facebook, Inc.,

YouTube, LLC, Twitter, Inc.'s Joint Motion to Dismiss [Doc. 61] ("the Motions"). For the

reasons stated below, the Motions are GRANTED.

## I. BACKGROUND

Plaintiff's Amended Complaint alleges the following facts, which the Court assumes to

be true for the purpose of the Motions:

Plaintiff Brian C. Davison is a resident of Loudoun County, Virginia who has "taken an

interest in the free speech rights of citizens within government-administered public fora." [Doc.

---

[1] Plaintiff filed this action on September 5, 2018. [Doc. 1]. All Defendants filed motions to dismiss the Complaint on November 2, 2018, and Plaintiff filed memoranda in opposition to Defendants' motions. [Docs. 29, 32, 41, 42]. Before the Court ruled on the motions, Plaintiff sought and obtained leave to file the Amended Complaint, which he filed on January 3, 2019. [Docs. 46, 50, 51]. On January 3, 2019, Plaintiff also filed a Motion for Preliminary Injunction [Doc. 52], which is still pending. Defendants then filed the Motions on January 25, 2019. [Docs. 57, 61].

51 at ¶ 10]. According to Plaintiff, "[e]ach social media site operator publishes its own terms of service that forbids [sic] content based on viewpoint." *Id.* at ¶ 46. Those terms of service state that users may not share content that violates the site's "Community Standards." *Id.* at ¶ 47. All of the social media Defendants' terms of service include similar bans on "hate speech" or "incit[ing] hatred against individuals or groups based on certain attributes." *Id.* at ¶¶ 47–49. Each of the social media Defendants maintains a policy of deleting content that violates these terms and/or banning or blocking users that share such content. *Id.* at ¶¶ 51–59. All three of the social media Defendants "invite[]" and "encourage[]" government organizations to use their services. *Id.* at ¶¶ 60–63.

The School Board has created pages on all three of the social media Defendants' platforms. *Id.* at ¶ 64–70. According to Plaintiff, by creating these pages and agreeing to the social media Defendants' terms of use, the School Board "agreed to . . . [their] viewpoint-based content moderation and banning of users based on past speech within their platforms. *Id.* at ¶ 71. Therefore, the School Board "is entwined with Defendant social media operators in the management and control of user comments on [the School Board]'s social media pages." *Id.* at ¶ 72. Conversely, "[b]y retaining the authority to moderate content on [the School Board]'s social media pages and to ban users from participating in those forums, Defendants Facebook, YouTube and Twitter constitute state actors with respect to the administration of [the School Board]'s social media public forums." *Id.* at ¶ 73. Further, as a result of these terms of use, "[w]illing [s]peakers are [c]hilled by [the] Service Providers' [p]rohibitions." *Id.* at 13 (heading).

In Counts III and IV, Plaintiff alleges that he suffered an injury to his First Amendment and Due Process rights when certain of his posted comments on the School Board's website were

2

deleted as a result of those policies. In that regard, on August 21, 2018, employees of the School Board created a post on their Facebook page that included the Superintendent's "back to school message video." *Id.* at ¶ 98. Shortly thereafter, Plaintiff created two comments on this post "that were critical of [the School Board]'s policies and the resulting standardized test scores." *Id.* at ¶ 99. Within a week, the comments were removed or hidden from the School Board's social media page. *Id.* at ¶ 100. When asked, School Board officials "denied removing or hiding the comments." *Id.* at ¶ 101. A nearly identical series of events occurred again on August 27, 2018, after Plaintiff left comments on another School Board post. *See id.* at ¶¶ 102–05. In a prior case involving Plaintiff and the School Board, Facebook admitted that its systems had deleted comments on the School Board's Facebook page in July 2016 without providing notice to the user whose comments were deleted, and "asserted that its systems had been updated and would no longer delete such content." *Id.* at ¶ 106. In October 2018, this happened again, and the School Board Supervisor denied deleting the comments. *Id.* at ¶ 107. Later, Facebook's counsel "acknowledged the comments were deleted by its systems." *Id.* at 108. Despite subsequent assurances by Facebook that it would not delete any more content on the School Board's pages, "Facebook continues to delete comments on government social media pages throughout its systems without any notice to the affected users." *Id.* at ¶¶ 106, 109.

Finally, Plaintiff alleges that Facebook, YouTube, and Twitter all promulgate terms of service that "require that any user who wishes to comment on their platform's social media pages consent to litigating any disputes in a court based in California," while simultaneously relieving government users of these venue restrictions. *Id.* at ¶¶ 118–19. According to Plaintiff, these provisions "chill the speech of willing speakers and threaten enforcement actions against engaged citizens," and "[t]he requirement for users to consent to litigate any constitutional

3

violations by Defendants in a court room thousands of miles away from the local government that sponsors the page is an unreasonable prior restraint to a limited public forum." *Id.* at ¶¶ 120–21.

The Amended Complaint contains five counts: Violation of Free Speech Rights Guaranteed by the First and Fourteenth Amendments Via Viewpoint Discrimination, against all four Defendants (Count I); Violation of Free Speech and Due Process Rights Guaranteed by the First and Fourteenth Amendments Via Unconstitutional Prior Restraints, against all four Defendants (Count II); Deletion of Davison's Comments on [the School Board]'s Social Media Pages Violates His Free Speech Rights (As Applied), against Defendant Facebook (Count III); Deletion of Davison's Comments on [the School Board]'s Social Media Pages Without Any Notice Violates His Due Process Rights (As Applied ), against Defendant Facebook (Count IV); and Defendants' Terms of Service Are an Unconstitutional Prior Restraint on a Limited Public Forum—Government Social Media Pages, against all four Defendants (Count V). *See* [Doc. 51].

Plaintiff seeks (1) declarations that the social media Defendants' policies governing user comments on the School Board's social media pages are unconstitutional; (2) a declaration that the social media Defendant's terms of service "requiring all disputes be litigated in a California venue to be unconstitutional when the dispute involves government social media pages administered as limited public forums"; (3) a declaration that "the [School Board]'s social media pages . . . are full or limited public fora"; (4) a declaration that the deletion of his comments on the School Board's pages violated his First Amendment and Due Process rights; and (5) an injunction requiring restoration of all of his deleted comments. *Id.* at 21–22.

4

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a *pro se* party's complaint must be construed liberally, it must nevertheless comply with the proper pleading rules and allege some comprehensible basis for the Court's jurisdiction. *See Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (stating that a *pro se* complaint must provide "more than labels and conclusions" (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555)); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The special judicial solicitude with which a district court should view . . . pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may be properly addressed" (quotation omitted)); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (explaining that "[p]rinciples requiring generous construction of pro se complaints are not . . . without limits" and district judges "cannot be expected to construct full blown claims from sentence fragments").

To establish standing, a plaintiff must satisfy the "case or controversy" requirement of Article III by demonstrating that he had the requisite stake in the outcome when the suit was filed and that the alleged prospective injury qualifies for redress. Specifically, the plaintiff must show (1) he has suffered an "injury in fact," (2) the injury is "fairly traceable" to the actions of the defendant, and (3) the injury will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560.

## III. ANALYSIS

The School Board seeks dismissal on the grounds that Plaintiff lacks Article III standing because he has not alleged that the School Board caused any concrete injury to him, and alternatively because he fails to allege a policy or practice attributable to the School Board. [Doc. 58 at 2–6]. Facebook, Twitter, and YouTube move to dismiss on the grounds that (1) they "are not state actors subject to the First and Fourteenth Amendments;" and (2) "Plaintiff has suffered no injury and therefore lacks standing to bring any claims against YouTube and Twitter." [Doc. 62 at 1].

### A. Loudoun County School Board's Motion to Dismiss [Doc. 57]

Based on the allegations in the Amended Complaint, Plaintiff does not have standing to sue the School Board for the alleged harms. Specifically, with respect to Counts I, II, and V, he has not alleged an injury in fact, and as to Counts III and IV, the injury he allegedly suffered— the deletion of his comments on the LCSB site—is not alleged to be fairly traceable to the School Board.

Counts I, II, and V are general challenges to the School Board and the social media Defendants' content policies, and they allege various forms of "chilling effects" that these policies have on the public at large. Paragraphs 93 and 94 are representative. They state,

> 92. Defendants Facebook, Twitter and YouTube's express policy states that they will ban users from commenting on the LCSB social media pages based on viewpoint-based criteria and prior speech.
>
> 93. Defendants' express policy calls for banning users based on prior speech without providing for protections required by law, namely the initiation of legal proceedings by the government or state actor to obtain injunctions against future speech by the offending user.

6

94. Such user bans represent unconstitutional prior restraints and violate both free speech and due process rights under the First and Fourteenth Amendments of the United States Constitution.

None of these or any other paragraphs in Counts I, III, and V point to any injury in fact that Plaintiff himself has suffered or any action that any of the Defendants (including the School Board) took against him. Accordingly, he lacks standing as to those counts because he has not alleged an injury in fact.

In contrast, Plaintiff does allege that he suffered a specific injury in Counts III and IV. However, he essentially concedes in the Amended Complaint that this injury is not fairly traceable to the School Board, which is not listed as a Defendant in Counts III or IV. *Id.* at 17. Moreover, in Count III, he alleges that the School Board members denied that they deleted in August and October 2018 his comments on posts on the School Board's or the Loudoun County Supervisor's Facebook pages and that Facebook's counsel later "acknowledged the [October 2018] comments were deleted by its systems." *Id.* at ¶¶ 102–05, 107–08. Although the Amended Complaint only specifically states that Facebook acknowledged that it deleted the October 2018 comments, it is clear from the factual context and all reasonable inferences drawn therefrom that Plaintiff alleges that Facebook deleted all three sets of comments. Accordingly, although the Amended Complaint alleges that the comments were deleted from a Facebook page affiliated with the School Board, it does not allege that the School Board had any involvement in any of these deletions. Count IV simply incorporates those same allegations. *Id.* at ¶¶ 113–15. Plaintiff has therefore failed to allege facts sufficient to establish standing to sue the School Board.

7

**B. Facebook, YouTube, and Twitter's Joint Motion to Dismiss [Doc. 61]**

Based on the allegations of the Amended Complaint, Plaintiff also lacks standing as to Defendants YouTube and Twitter. In that regard, the specific allegations against YouTube and Twitter are that the School Board has created accounts on them, that those accounts constitute limited public fora, that these Defendants "retain authority and the ability to moderate content within LCSB's social media pages on their respective platforms," that this retained authority makes them "state actors," and that because their terms of use state that they will "delete content" or "ban users" on the Board's social media pages based on viewpoint-based criteria," these Defendants violate the First Amendment's prohibition on viewpoint discrimination. *See, e.g.*, [Doc. 51 at ¶¶ 84–88]. Count V further alleges that YouTube and Twitter have terms of service that "require that any user who wishes to comment on their platform's social media pages consent to litigating any disputes in a court based in California," and that these terms constitute "an unreasonable prior restraint to a limited public forum" by forcing "users to consent to litigate any constitutional violations by Defendants in a court room thousands of miles away from the local government that sponsors the page." *Id.* at ¶¶ 118, 121.

None of these general allegations allege facts that make plausible that the Plaintiff personally was harmed. He does not allege anywhere in the Amended Complaint that he has created accounts on either of these social media platforms, nor does he allege that any comments of his were deleted by these Defendants. Even construing the Amended Complaint liberally and drawing all reasonable inferences in Plaintiff's favor, the Amended Complaint contains no factual allegations tying any action of these two social media Defendants to any harm Plaintiff suffered, because the only allegations specific to him are allegations concerning the deletion of

8

his comments on Facebook. Accordingly, Plaintiff has failed to allege facts that make plausible that he has standing to sue Defendants YouTube and Twitter.

As to Defendant Facebook, Plaintiff alleges he has suffered a concrete injury resulting from Facebook's conduct but he has failed to state a cognizable constitutional claim because he has failed to allege facts that make plausible that Facebook acted as a state actor. Plaintiff argues that Facebook (as well as Defendants YouTube and Twitter) acted as a state actor because of the following:

- "By retaining the authority to exercise administrative control over comments within Defendant LCSB's social media pages and by issuing an explicit policy governing the content on such pages, Defendants Facebook, YouTube and Twitter constitute state actors with respect to LCSB's social media pages on their respective social media sites." [¶ 84];

- "By retaining the authority to moderate content on LCSB's social media pages and to ban users from participating in those forums, Defendants Facebook, YouTube and Twitter constitute state actors with respect to the administration of LCSB's social media public forums." [¶ 73];

- "By creating the social media pages on Facebook, YouTube and Twitter, LCPS agreed to the terms of service for each social media operator including its viewpoint-based content moderation and banning of users based on past speech within their platforms. Therefore, LCSB is entwined with Defendant social media operators in the management and control of user comments on LCSB's social media pages. By retaining the authority to moderate content on LCSB's social media pages and to ban users from participating in those forums, Defendants Facebook, YouTube and Twitter constitute state actors with respect to the administration of LCSB's social media public forums." [¶¶ 71–73 (paragraph divisions omitted)].

The social media Defendants are indisputably private companies. But "a claim under 42 U.S.C. § 1983 requires that the defendant be fairly said to be a state actor." *DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999). Therefore, they are only subject to constitutional claims against them if they were serving as *de facto* state actors in administering the School Board's

social media sites or promulgating their terms of service.  Under governing case law, private

parties will not be deemed *de facto* state actors "unless the state has so dominated such activity

as to convert it into state action: 'Mere approval of or acquiescence in the initiatives of a private

party' is insufficient." *Id.* at 507 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).  Such

domination exists if "the State has exercised coercive power or has provided such significant

encouragement that the choice must in law be deemed to be that of the State." *Id.* (internal

quotation marks and alteration omitted).

Based on this principle and further refinements set out by the Supreme Court in

subsequent decisions, the Fourth Circuit has recognized "four exclusive circumstances under

which a private party can be deemed to be a state actor." *Andrews v. Federal Home Loan Bank*

*of Atlanta*, 998 F.2d 214, 217 (4th Cir. 1993).  These are:

> (1) when the state has coerced the private actor to commit an act that would be
> unconstitutional if done by the state; (2) when the state has sought to evade a clear
> constitutional duty through delegation to a private actor; (3) when the state has
> delegated a traditionally and exclusively public function to a private actor; or (4)
> when the state has committed an unconstitutional act in the course of enforcing a
> right of a private citizen.

*Id.*  "If the conduct does not fall into one of these four categories, then the private conduct is not

an action of the state." *Id.*

The facts alleged in the Amended Complaint do not establish, or make reasonably

inferable, that any of these factors is present in Facebook's relationship with the School Board,

its promulgation of the applicable terms of service, or its administration of the School Board's

social media pages pursuant to the terms of service.  There is no suggestion that the School

Board "coerced" or even discussed deleting Plaintiff's comments on Facebook.  Nor is there any

suggestion that the School Board or any other government actor delegated any functions to

10

Facebook with regard to its management of its social media pages. In fact, Plaintiff alleges the contrary in the Amended Complaint when he states that "LCSB retains the ability to delete user comments or block users from commenting on their social media pages." [Doc. 51 at ¶ 83]. Similarly, there is no indication that the School Board or any other state actor coerced or even conferred with Facebook regarding its terms of service, which, as Plaintiff admits in the Amended Complaint, apply universally to government and non-government social media users. *See id.* at ¶ 52 ("Defendant social media operators' viewpoint-based content policies operate equally across all social media pages on its sites including pages controlled by government organizations such as Defendant LCSB.").

Under these circumstances, Facebook cannot be deemed a state actor. For that reason, Facebook has, as a private entity, the right to regulate the content of its platforms as it sees fit. *See La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991 (S.D. Tex. 2017) (observing that Facebook has a "First Amendment right to decide what to publish and what not to publish on its platform"). Indeed, the Fourth Circuit has held that a private party was not a state actor for purposes of a § 1983 claim when the private party was significantly more "entwined" with state actors and engaged in a more traditional public forum than Facebook is in this case. For example, in *DeBauche*, the Court held that the plaintiff, a gubernatorial candidate, did not state a § 1983 claim against a privately employed debate moderator and private television broadcasters when she alleged that they excluded her from a debate held at Virginia Commonwealth University (a state university), which she alleged was a public forum. 191 F.3d at 502–03. Her complaint alleged that the moderator and broadcasters were state actors liable for excluding her because they coordinated with the public university to use its property, "staff and other resources to plan, promote, manage and execute the debate." *Id.* at 503–04. The Court disagreed, holding

11

that the private parties' conduct in organizing, moderating, and sponsoring the debate were functions that are "not within the exclusive prerogative of the government." *Id.* at 508–09. The Court observed that the private parties also had First Amendment rights, namely, the right to "select the content" of the debates they host, which amounts to "independently-motivated, private actions, rather than state action." *Id.* at 509 (internal quotation marks and alteration omitted). Similarly, in *United Auto Workers v. Gaston Festivals, Inc.*, the Fourth Circuit held that a private entity which organized a public festival that was held on public property and partly paid for with public money was not a state actor. 43 F.3d 902, 906 (4th Cir. 1995).

Accordingly, Plaintiff has failed to state a plausible claim that Facebook is a state actor subject to the alleged constitutional guarantees.

## IV. CONCLUSION

Accordingly, it is hereby

ORDERED that Defendant Loudoun County School Board's Motion to Dismiss and *Roseboro* Notice [Doc. 57] and Defendants Facebook, Inc., YouTube, LLC, Twitter, Inc.'s Joint Motion to Dismiss [Doc. 61] be, and the same hereby are, GRANTED; and this action is DISMISSED; and it is further

ORDERED that Plaintiff's Motion for a Preliminary Injunction [Doc. 52] and Motion for Leave to File Reply Briefs for Plaintiff's Preliminary Injunction Out of Time and Leave to Withdraw Doc. No. 67 [Doc. 71] be, and the same hereby are, DENIED as moot.

**This is a Final Order for purposes of appeal.** To appeal, Plaintiff must file a written notice of appeal with the Clerk's Office within thirty (30) days of the date of this Order as required by Rules 3 and 4 of the Federal Rules of Appellate Procedure. A written notice of appeal is a short statement stating a desire to appeal this Order along with the date of the Order

plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the Court.

The Clerk is directed to forward a copy of this Order to all counsel or record and to *pro se* Plaintiff at the address provided.

Anthony J. Trenga
United States District Judge

February 26, 2019
Alexandria, Virginia

13